The Judges having taken time to consider this case, a majority of them, Giumke, Bay and Tre2evant, were of opinion, that the land in dispute could not be affected by the confiscation act, as it had gone over to, and vested in, young Jacob Julien, the infant son, before the act passed. That all acts of attainder, before trial and conviction of offenders, for supposed offences against a state, working a corruption of blood, and cutting off the inheritance of *538 children, have always been considered by the wisest and best informed men of every age and country, as arbitrary and unjust, and even repugnant to the feelings of humanity: for which reasons, courts of justice ought to give them a very rigid construction, and circumscribe them within the narrowest possible bounds and limits.
That this 19th clause of the act particularly, was one of this description, and it related back to the year 1776, a period of more than five years previous to the passing of the act declaring the offence, and fixing the punishment for the commission of it. In this respect, it was an ex post facto law, little congenial with the principles of the American revolution itself, or the spirit of our laws, and constitution of our government, as it tended to punish innocent and unoffending children, for the supposed offences of their fathers against the state, before the law itself passed, creating the offence, or defining the punishment for it.
That in the present case, George Julien, the father, died in 1781, a year before the confiscation law passed. Upon the death of the father, the estate, by the rules of the common law, went over to the son, and then became vested in him.
In the year 1782, the confiscation law passed, which, among other things, declared that the offence of adhering to the enemy, should work a forfeiture of the estates of those who did adhere to the enemy. George Julien was not then in existence; he could not therefore be said to be adhering to the enemy; and when the law passed, the father had no estate to confiscate, for it had previously gone over by descent to his infant son, whose name is not mentioned in the act as having committed any of-fence against the state ; it would therefore be against every principle of law, as well as justice, to punish him by forfeiture and confiscation of his estates. They were, for these reasons, in favour of a new trial.
Brevard and Lee, contra.
They thought the law was express and positive upon the subject, and there was nothing to prevent the legislature from passing it at the time; they were not circumscribed by a constitution, as at present, from making ex post facto laws. If a law to that effect was to be passed by the legislature at this day, it would be void and nugatory, because our present constitution forbids it. Nothing of the kind stood in their way at that day, when, perhaps, the policy of the times justified it. But that was not a matter for judicial consideration; the only point for their consideration was, whether that law was binding or not? and upon this point they had no doubt. They were, therefore, for confirming the verdict.
Rule for new trial made absolute.